**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NADIA LOESEL and JENNIFER TURIANO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>CRYSTAL RUN HEALTHCARE PHYSICIANS, LLP, and CRYSTAL RUN AMBULATORY SURGERY CENTER OF MIDDLETOWN, LLC,<br><br>Defendants. | Case No. 7:26-cv-00655 |

**REPLY IN SUPPORT OF DEFENDANTS CRYSTAL RUN HEALTHCARE PHYSICIANS, LLP AND CRYSTAL RUN AMBULATORY SURGERY CENTER OF MIDDLETOWN, LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1
ARGUMENT ..... 1
I. Plaintiffs Fail to State a Wiretap Act Claim. ..... 1
A. Plaintiffs Have No Viable Theory of Liability Under the Wiretap Act. ..... 1
B. Plaintiffs Cannot Invoke the Crime-Tort Exception. ..... 3
1. Plaintiffs Have Not Shown an Underlying HIPAA Violation ..... 3
2. Plaintiffs Fail to Show Defendants Purposefully Violated HIPAA. ..... 5
3. Plaintiffs Further Fail to Allege a Separate and Independent Crime or Tort. ..... 6
C. No "Contents" of Plaintiffs' Communications Were Intercepted. ..... 7
II. Plaintiffs' Breach of Implied Contract Claim Fails. ..... 8
III. Plaintiffs' Unjust Enrichment Claim Should Be Dismissed. ..... 10
CONCLUSION ..... 11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*American Hospital Association v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................3, 4, 5

*American Hospital Association v. Becerra*,
No. 4:23-cv-01110-P, Dkt. 53 ....................5

*Beltran v. Drs. Med. Ctr. Of Modesto*,
2025 WL 1635467 (E.D. Cal. June 9, 2025)....................8

*In re Blue Shield of California Privacy Litig.*,
No. 4:25-cv-03209-YGR (N.D. Cal. July 10, 2026), Dkt. 134....................3, 7

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .................... 6, 7

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................2

*Chamberlain v. City of White Plains*,
986 F. Supp. 2d 363 (S.D.N.Y. 2013) ....................9

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ....................7, 10

*De Ayora v. Inspire Brands, Inc.*,
2026 WL 1653483 (N.D. Cal. June 8, 2026) ....................8

*DirecTV, Inc. v. Treworgy*,
373 F.3d 1124 (11th Cir. 2004) ....................2

*Doe v. Roe*,
93 Misc. 2d 201 (N.Y. Sup. Ct. 1977)....................8, 9

*Doe v. Talkiatry Mgmt. Servs., LLC*,
816 F. Supp. 3d 1206 (C.D. Cal. 2026)....................6

*Doe v. Upperline Health, Inc.*,
2024 WL 4953503 (S.D. Ind. Sep. 24, 2024) ....................8

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
423 F. Supp. 2d 173 (S.D.N.Y. 2006) ....................9

*In re DoubleClick Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....5

*Greene v. Clean Rite Ctrs., LLC*,
714 F. Supp. 3d 134 (E.D.N.Y. 2024) ....10

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992) ....3

*J.C. v. Cath. Health Sys. Inc.*,
2024 WL 5136236 (W.D.N.Y. Aug. 29, 2024) ....4

*Joiner v. NHL Enterprises, Inc.*,
2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025) ....6, 7

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ....4

*Kingsley v. Price*,
163 A.D.3d 157 (N.Y. App. Div. 2018) ....8

*Kirch v. Embarq Mgmt. Co.*,
2011 WL 3651359 (D. Kan. Aug. 19, 2011), *aff'd*, 702 F.3d 1245 (10th Cir. 2012) ....2

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012) ....2

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991) ....9

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) ....2

*Mount v. PulsePoint, Inc.*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2026) ....10

*Nichols v. Peacehealth Networks on Demand LLC*,
2026 WL 607763 (W.D. Wash. Mar. 4, 2026) ....3

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000) ....1, 2, 3

*Perry v. Rockmore*,
238 A.D.3d 67 (N.Y. App. Div. 2025) ....8

*In re Practicefirst Data Breach Litig.*,
2022 WL 354544 (W.D.N.Y. Feb. 2, 2022) ....10

*Santoro v. Tower Health*,
2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) ........ 11

*In re Toys R Us, Inc. Privacy Litig.*,
2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ........ 2

*United States v. Jiau*,
734 F.3d 147 (2d Cir. 2013) ........ 5, 6

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
127 F. Supp. 3d 156 (S.D.N.Y. 2015) ........ 9

*Wu v. Uber Techs., Inc.*,
43 N.Y.3d 288 (Ct. App. N.Y. 2024) ........ 9

**Statutes**

18 U.S.C. § 2520 ........ 1, 2, 3

42 U.S.C. § 1320d-6 ........ 7

Health Insurance Portability and Accountability Act ("HIPAA") ........ *passim*

Racketeer Influenced and Corrupt Organizations Act ("RICO") ........ 3

Wiretap Act ........ *passim*

**Other Authorities**

45 C.F.R. § 160.103 ........ 5

45 C.F.R. § 164.514 ........ 4

## INTRODUCTION

Plaintiffs' Opposition cannot cure the fundamental flaws identified in Defendants' Motion to Dismiss. The Opposition argues that data about visitor activity on the public Crystal Run Website constitutes identifiable patient medical information disclosed in a confidential healthcare setting. That is wrong. Neither the Wiretap Act nor New York common law support Plaintiffs, and the Second Amended Complaint ("SAC") contains no allegations that would support such an expansion of liability for public website interactions. Second Circuit precedent forecloses Plaintiffs' theory of secondary liability under the Wiretap Act and their attempt to invoke the crime-tort exception to party consent. They also cannot establish the formation of an implied contract or any cognizable damages, nor can they show that Defendants were unjustly enriched. For all of these reasons, the SAC should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiffs Fail to State a Wiretap Act Claim.

Nothing in Plaintiffs' Opposition fixes the multiple defects that doom their Wiretap Act claim.

#### A. Plaintiffs Have No Viable Theory of Liability Under the Wiretap Act.

Under the Wiretap Act, only those whose communications are "intercepted, disclosed, or intentionally used" may pursue a civil action against the "person or entity . . . which engaged in ***that violation***." 18 U.S.C. § 2520(a) (emphasis added). Plaintiffs identify no pleaded act by Defendants that constitutes interception, disclosure, or intentional use under § 2520. S*ee* Mot. 7–8, n.5. Their claim therefore depends entirely on procurement. But Plaintiffs' procurement theory is wrong for two main reasons.

<u>No Procurement-Based Private Right of Action</u>. Each Circuit Court that has analyzed this question has reached the same conclusion: the Wiretap Act's private right of action bars

procurement-based claims. *See Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168–69 (5th Cir. 2000) (analyzing § 2520's text and legislative history); *Luis v. Zang*, 833 F.3d 619, 634–38 (6th Cir. 2016) (same, citing *Peavy*); *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246–47 (10th Cir. 2012) (same, citing *Peavy*). Rather than grapple with this authority, Plaintiffs cite a trio of Circuit decisions that never squarely addressed the question of procurement under the statute. *See* Opp. 3.

Plaintiffs' reliance on inapposite cases is not surprising because § 2520's text and history support Defendants' interpretation. In 1986, the Wiretap Act was amended to remove language from the private right of action that had permitted claims against a person who "procures any other person to intercept, disclose, or use such communications." *Peavy*, 221 F.3d at 168. When "Congress acts to amend a statute, courts presume it intends its amendment to have real and substantial effect." *Id*. (citation omitted). As amended, § 2520 narrows civil claims to those against persons who engaged in "that violation"—i.e., who intercepted, disclosed or intentionally used communications in violation of the law. *Id*. at 169. "The phrase 'which engaged in ***that violation***' makes apparent the intent of Congress to limit liability to a certain class of defendants." *DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1126 (11th Cir. 2004). The other cases Plaintiffs cite, Opp. 6, likewise fail to meaningfully engage this analysis of § 2520.

Plaintiffs' other arguments are equally unavailing. The case law cited above and in Defendants' Motion cannot be cabined to "derivative secondary liability," Opp. 6, as the cases also address procurement under the statute. *E.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089–90 (N.D. Cal. 2015) (citing *In re Toys R Us, Inc. Privacy Litig.*, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) (defendant installed code on website that loaded on visitors' browsers); *Kirch v. Embarq Mgmt. Co.*, 2011 WL 3651359, at *2 (D. Kan. Aug. 19, 2011), *aff'd*, 702 F.3d 1245 (10th Cir. 2012) (internet service provider hired advertising company to install technology on networks)).

Similarly, Plaintiffs' argument about a "statutory prohibition with no corresponding civil remedy," Opp. 5, ignores that the procurement provision "can be enforced through . . . a criminal proceeding." *Peavy*, 221 F.3d at 169. Those who may be criminally liable under the Wiretap Act and who "may be held civilly liable are ***not*** the same." *Id*. at 168. It is not uncommon for a statutory scheme to proscribe a different scope of liability under its criminal and civil provisions. *E.g.*, *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 265–66 (1992) (interpreting narrower scope of liability for civil RICO action).

A clear "majority" of courts to consider this issue "reject[] the notion that a defendant may be held liable for 'aiding and abetting' or 'procuring' an interception." *Nichols v. Peacehealth Networks on Demand LLC*, 2026 WL 607763, at *4, n.4–5 (W.D. Wash. Mar. 4, 2026) (collecting cases); *see also In re Blue Shield of California Privacy Litig.*, No. 4:25-cv-03209-YGR (N.D. Cal. July 10, 2026), Dkt. 134 at *11 ("[T]he majority of courts . . . have found that defendants cannot be liable under Section 2520 for 'procuring' an interception."). The Court should join this majority and dismiss Plaintiffs' procurement-based Wiretap Act claim.

<u>No Third-Party Interception</u>. Plaintiffs also do not respond to the fact that their browsers ***directly*** communicated with the Technology Vendors. *See* Mot. 7–8. As parties to Plaintiffs' communications, the Technology Vendors are not third-party interceptors, and Plaintiffs' Wiretap Act claim fails for this reason as well. *Id*.

**B. Plaintiffs Cannot Invoke the Crime-Tort Exception.**

Plaintiffs do not dispute that the only way around the Wiretap Act's party and consent limitations is through the crime-tort exception, but they fail to satisfy its requirements.

1. <u>Plaintiffs Have Not Shown an Underlying HIPAA Violation.</u>

Plaintiffs cannot escape the holding in *American Hospital Association v. Becerra* that non-personally identifying device metadata plus browsing data on publicly accessible websites does

not equal individually identifiable health information ("IIHI"). 738 F. Supp. 3d 780, 799–804 (N.D. Tex. 2024). Plaintiffs fail to satisfy either the "identifies" or "relates to" requirements for IIHI. Mot. 9–10.

With respect to the "identifies" prong, Plaintiffs do not address precedent holding that the relevant data at issue—device IP addresses, device metadata, and cookies—are not personally identifying information. Mot. 10–12. Plaintiffs instead make three arguments. First, their DoubleClick DSID theory depends on a visitor being logged into Google Services, Opp. 8–9, but Plaintiffs do not allege that they either own or used a logged-in Google account during any Website visit. *See* SAC ¶¶ 28, 91–92. Plaintiffs' cases relying on data associated with users' Facebook accounts are likewise inapposite because the SAC does not allege that the Meta Pixel was used on the Crystal Run Website or that Plaintiffs were logged into a Facebook account at the time of any visit. *E.g.*, *J.C. v. Cath. Health Sys. Inc.*, 2024 WL 5136236, at *14 (W.D.N.Y. Aug. 29, 2024) (use of Meta Pixel satisfies identifies prong because "[n]o speculation at all is needed to connect an individual to their Facebook ID"); *see also* Opp. 10–11 (citing similar cases involving Meta Pixel).

Second, Plaintiffs incorrectly conflate HIPAA's de-identification regulation with what is necessary to establish IIHI. Opp. 9. As 45 C.F.R. § 164.514(a) makes clear, "information that does not identify an individual" or cannot reasonably be used to identify an individual "***is not*** individually identifiable health information" (emphasis added). Only after information is established as IIHI does § 164.514(b) kick in for de-identification. Put another way, § 164.514 "does not designate an IP address as protected health information . . . , it lists IP addresses among identifiers that must be removed to de-identify health information." *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1180 n.4 (N.D. Cal. 2025). Indeed, *Becerra* rejected the same argument

Plaintiffs advance here to try to reverse engineer the definition of IIHI. *Compare Becerra*, No. 4:23-cv-01110-P, Dkt. 53, at 7, 28 *with Becerra*, 738 F. Supp. 3d at 803.

Third, Plaintiffs misread HHS's 2013 Omnibus Rule's preamble. Opp. 10. That guidance does not say that any information tied to a covered entity is necessarily PHI; rather, it simply states that IIHI tied to a covered entity qualifies as PHI, which is consistent with the regulation, 45 C.F.R. § 160.103, and says nothing about what is required to satisfy the "identifies" prong.

As for the "relates to" prong, Plaintiffs' alleged browsing activity on the public Website does not concern a specific individual's health condition, health care, or payment for health care without knowledge of the visitor and their subjective intent—something Defendants do not know. *See Becerra*, 738 F. Supp. 3d at 802. Plaintiffs respond that patient status is itself PHI. Opp. 9. But none of Plaintiffs' alleged activities on the Website would show patient status. For example, the "Find a Doctor" feature and registration form, *see* SAC ¶¶ 62, 68, 91–92, are accessible to patients and ***non***-patients alike. Plaintiffs' cases involve allegations absent here: Meta Pixel or Facebook IDs tied to logged-in accounts, tracking inside patient portals, and/or disclosure of actual treatment, diagnosis, test, prescription, or medical-record information. *See* Opp. 10–11. The SAC alleges none of those things. Absent such allegations, courts routinely conclude that browsing activity on public healthcare websites does not constitute IIHI. *See* Mot. 12–13 (collecting cases).

2. <u>Plaintiffs Fail to Show Defendants Purposefully Violated HIPAA.</u>

Even if Plaintiffs had properly alleged an underlying HIPAA violation, they fail to show that Defendants' "primary motivation" or "determinative factor" in their use of the Website Technologies was to violate HIPAA. Mot. 13 (citing *In re DoubleClick Privacy Litig.*, 154 F. Supp. 2d 497, 514–15 (S.D.N.Y. 2001)). Plaintiffs' out-of-Circuit cases cannot displace Second Circuit precedent, which requires an objective or intent to achieve a criminal or tortious ***result***. *See United*

*States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (crime-tort exception is "confined to instances where the recording party intends to use the recording to harm or injure a recorded party"); *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) ("[T]he offender must have as her objective a tortious or criminal result."). Defendants are not arguing that any commercial motive insulates a party from liability; rather, the analysis turns on whether the defendant "intends to use the recording to harm or injure a recorded party." *Jiau*, 734 F.3d at 152. Plaintiffs plead Defendants used the Website Technologies for analytics and advertising, not to violate HIPAA or injure Plaintiffs.

Plaintiffs' trade secret hypothetical underscores this distinction. Opp. 13. Wiretapping a phone call to steal trade secrets evinces a criminal purpose regardless of whether the recorder planned to use the information to make money. Here, by contrast, using ubiquitous technologies on a public website for analytics and marketing purposes is not itself unlawful. *See* Mot. 2–3. As the court in *Joiner v. NHL Enterprises, Inc*. aptly put it, while a "pecuniary motive" does not preclude civil liability, "the existence of a profit motive does not make otherwise lawful conduct tortious." 2025 WL 2846431, at *9 (S.D.N.Y. Aug. 29, 2025) (dismissing similar Wiretap Act claim for failure to show criminal/tortious purpose). Most courts addressing similar public-webpage tracking allegations have found no primary motivation to violate the law. *E.g.*, *Doe v. Talkiatry Mgmt. Servs., LLC*, 816 F. Supp. 3d 1206, 1210 (C.D. Cal. 2026) (website technology was used for market research and advertising, not to violate HIPAA); Mot. 15 (collecting similar cases). To the extent there is any "split in authority," Opp. 11, the rule of lenity counsels against imposing expansive Wiretap Act liability in these circumstances. Mot. 18–19.

3. <u>Plaintiffs Further Fail to Allege a Separate and Independent Crime or Tort.</u>

Plaintiffs also cannot differentiate between the alleged "interception" and "disclosure" because, in the SAC, both occur when the Website Technologies purportedly direct Website

visitors' browsers to communicate with the Technology Vendors. SAC ¶¶ 103–09. Plaintiffs try to sidestep this reality by arguing that "the interception does not complete the alleged wrong." Opp. 17. But they fail to identify what secondary "disclosure" is necessary to complete the alleged HIPAA violation given the alleged disclosure is the ***same*** browser transmission they call the Wiretap Act interception. The alleged HIPAA violation is therefore "complete when the interception occurs" and is "insufficiently 'independent' of the Wiretap Act violation." *Joiner*, 2025 WL 2846431, at *8; *see also* Mot. 16–17. Plaintiffs' cases do not overcome *Caro*'s requirement that the crime or tort be independent of the alleged recording or interception and conflate what is required to establish a HIPAA violation under § 1320d-6—the knowing disclosure of IIHI to an unauthorized third party, *id.* § 1320d-6(a)(3)—with the forms of penalties available—i.e., heightened penalties when the "offense is committed with intent to sell, transfer, or use [IIHI] for commercial advantage," *id.* § 1320d-6(b)(3), *see Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 382–83 (S.D.N.Y. 2024). Moreover, as described above, the allegations do not show that Defendants engaged in any interceptions or disclosures to begin with. *See supra* § I.A; *see also In re Blue Shield*, No. 4:25-cv-03209-YGR, Dkt. 134 at *13–14 (crime tort exception does not apply when plaintiffs failed to plausibly allege interception, use, or disclosure by the defendant).

For all these reasons, Plaintiffs cannot invoke the crime-tort exception.

**C. No "Contents" of Plaintiffs' Communications Were Intercepted.**

Plaintiffs' Wiretap Act claim also should be dismissed because Plaintiffs have not pleaded interception of "contents." Mot. 17–18. Plaintiffs' Opposition again relies on hypotheticals about what Website visitor information ***could*** be obtained, *see* Opp. 17–18 (citing SAC ¶¶ 62, 64, 67–69), but not that any contents of their communications were ***actually transmitted***. "In the absence of any allegation that plaintiffs themselves interacted with the websites in a manner that involved

communications whose contents could have been intercepted, they fail to plead the elements of a valid wiretapping claim." *De Ayora v. Inspire Brands, Inc.*, 2026 WL 1653483, at *6 (N.D. Cal. June 8, 2026) (analyzing same element under California wiretapping statute).

**II. Plaintiffs' Breach of Implied Contract Claim Fails.**

Plaintiffs' attempt to evade the infirmities of their breach of implied contract claim fails for three reasons:

First, Plaintiffs cannot manufacture an implied agreement in the "healthcare context," Opp. 22–23, when New York law limits such confidentiality expectations to circumstances where an actual doctor-patient relationship is formed and care is provided, not browsing a public website. *See Kingsley v. Price*, 163 A.D.3d 157, 161 (N.Y. App. Div. 2018) (no physician-patient relationship where defendant did not examine or otherwise administer care to plaintiff). Plaintiffs' cited authority (in one instance over 50 years old) underscores this critical distinction. *See Doe v. Roe*, 93 Misc. 2d 201, 210 (N.Y. Sup. Ct. 1977) (implied covenant of confidentiality when "a physician . . . enters into an agreement with a patient to provide medical attention"); *Perry v. Rockmore*, 238 A.D.3d 67, 68 (N.Y. App. Div. 2025) (physician-patient relationship existed when defendant performed rhinoplasty on plaintiff). Plaintiffs do not allege facts showing they entered any such relationship through their interactions with the Website. They merely allege that they used the "Find a Doctor" feature, requested an appointment and callback, and conducted various searches. SAC ¶¶ 91–92. Courts across the country have found that similar allegations about activity on public portions of websites are insufficient to support an implied contract claim. *E.g.*, *Beltran v. Drs. Med. Ctr. of Modesto*, 2025 WL 1635467, at *5, *12 (E.D. Cal. June 9, 2025); *Doe v. Upperline Health, Inc.*, 2024 WL 4953503, at *3 (S.D. Ind. Sep. 24, 2024). This Court should too.

Second, Plaintiffs' arguments against the Court's consideration of the Privacy Policy also

fail.[1] Plaintiffs cannot evade the impact of the Privacy Policy by gesturing to supposedly boilerplate language about "cookies" and "web beacons." Opp. 24. The Privacy Policy explicitly states that third parties will "collect Activity Information" and "track browsing activity over time and across third-party websites." Ahuja Decl. Ex. 1 (Dkt. 26), at 3; *cf. Wu v. Uber Techs., Inc.*, 43 N.Y.3d 288, 299 (N.Y. 2024) ("[T]here is no requirement that a party have correctly understood—or even reviewed—the terms presented by the offeror for their manifestation of acceptance to be effective.").

Third, Plaintiffs have not adequately alleged damages. Opp. 24–25. To start, Plaintiffs fail to respond, and therefore waive any arguments in favor of, either their invasion of privacy or chilling effect theories of damages. *See Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 392 (S.D.N.Y. 2013). Plaintiffs' arguments regarding benefit of the bargain and diminution of value, Opp. 24–25, fare no better. For Plaintiffs' data to have economic value, they must connect their public website activity to the provision of healthcare. The single case Plaintiffs cite, *Doe*, only found an implied covenant because there were "disclosures" concerning "the patient's physical or mental condition" shared with or discovered by their physician during treatment. 93 Misc. 2d at 210. Here, by contrast, Plaintiffs do not allege that they made any disclosures to the Website regarding their own physical or mental conditions. SAC ¶¶ 91–92. Nor do they allege

---

[1] Courts in this District routinely take judicial notice of a party's public website even though such websites can change. *E.g.*, *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166–67 (S.D.N.Y. 2015) (judicial notice of "information publicly announced" on a "party's official website"); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) (similar). Tellingly, Plaintiffs do not dispute the Privacy Policy's authenticity or whether it appeared on the Website. Opp. 19–20. Moreover, consideration of the Privacy Policy does not require conversion of the motion to a motion for summary judgment. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) (stating that, in a motion to dismiss, a court may consider matters of which "judicial notice may be taken under Fed. R. Evid. 201" without converting the motion).

examination, treatment, or disclosures made to a physician, or that they paid for any services from Defendants.

On their loss of value theory, Opp. 25, Plaintiffs' assertions about the value of health data in general are insufficient; they still fail to show that ***their*** health data ***lost*** economic value. Mot. 22–23. To do so, Plaintiffs must allege that they "attempted to sell their personal information and were forced to accept a decreased price" or could no longer use their data, which they fail to do. *In re Practicefirst Data Breach Litig.*, 2022 WL 354544, at *7 (W.D.N.Y. Feb. 2, 2022).

**III. Plaintiffs' Unjust Enrichment Claim Should Be Dismissed.**

Finally, Plaintiffs' attempt to prop up their unjust enrichment claim falls flat. Opp. 25–28.

Plaintiffs' assertion that the Federal Rules allow them to make claims in the alternative, Opp. 25–27, cannot override clear authority holding that unjust enrichment is a limited, equitable cause of action, not a "catchall . . . to be used when others fail," *Cooper*, 742 F. Supp. 3d at 386, and is barred even when duplicative claims are also dismissed, *Greene v. Clean Rite Ctrs., LLC*, 714 F. Supp. 3d 134, 151 (E.D.N.Y. 2024) ("[T]he fact that Plaintiff's [other] claim is insufficiently pled does not mean that her unjust enrichment claim based on the same allegations survives.").

Plaintiffs further fail to allege any of the required elements for unjust enrichment. First, Plaintiffs point to "commercial benefits" Defendants supposedly received, Opp. 27, but still absent from the SAC are any allegations regarding the value of ***Plaintiffs'*** browsing data or how that data supposedly enriched Defendants. Plaintiffs fail to address the authority Defendants cited dismissing similar cases on these grounds. Mot. 25.

Second, Plaintiffs fail to show any enrichment at their expense. Opp. 27–28. Their allegation that healthcare data is generally valuable is insufficient without allegations showing that Plaintiffs had the ability to monetize, use, or benefit from the Website data. Mot. 25; *Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *6, *13 (S.D.N.Y. Aug. 17, 2016) (dismissing unjust

enrichment claim because "while plaintiffs reference programs compensating individuals in exchange for monitoring their web browsing, they do not allege that they are unable to participate in or would receive less compensation from such programs").

Third, Plaintiffs fail to show any inequity. Opp. 28. Again, without any cited authority, Plaintiffs argue that because their interactions with the Website were health-related, unjustness must exist. But, as Plaintiffs note, context matters. They do not show they had a reasonable expectation of privacy in their activity on public portions of the Website. Courts have repeatedly held that, even in the healthcare context, "it is widely understood" that activity performed on a public website is not anonymous. *Santoro v. Tower Health*, 2024 WL 1773371, at *1 (E.D. Pa. Apr. 24, 2024). Plaintiffs' assertions also are undermined by the Privacy Policy, which states that third parties "collect Activity Information" and "track browsing activity over time." Ahuja Decl. Ex. 1, at 3. There is no inequity here.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' claims should be dismissed with prejudice.

///

///

///

///

///

///

///

///

///

///

///

Respectfully submitted,

/s/ *Jasmeet K. Ahuja*

Jasmeet K. Ahuja (Bar No. 5294327)
HOGAN LOVELLS CADWALADER US LLP
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
jasmeet.ahuja@hlc.com

Adam A. Cooke (*pro hac vice*)
HOGAN LOVELLS CADWALADER US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5479
Facsimile: (202) 637-5910
adam.a.cooke@hlc.com

*Counsel for Crystal Run Healthcare Physicians, LLP and Crystal Run Ambulatory Surgery Center of Middletown, LLC*

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.1(c), I certify that the accompanying brief contains 3,483 words, excluding the parts of the document exempted by Local Rule 7.1(c). This certificate was prepared in reliance on the word-count function of the word processing system (Microsoft Word) used to prepare the document.

/s/ *Jasmeet K. Ahuja*
Jasmeet K. Ahuja